[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Presently before the court are the defendants' motions to dismiss for lack of personal jurisdiction. As the defendants have put forward separate arguments in support of their respective motions, the court will address each defendant's motion seriatim. First, however, some relevant factual background is appropriate.[1]
The plaintiff, Michael Snow, is a New York resident. The defendant Nation Auto USA, Inc. ("Nation") is a corporation incorporated in both Connecticut and Delaware, and has a principal place of business in East Windsor, Connecticut. The defendant Condor Reinsurance Co., Ltd. ("Condor") is an Island of Nevas corporation with a principal place of business also in East Windsor. The defendant Michael Rozowicz is either a Massachusetts or New York resident,[2] and he is the president of Nation and a corporate officer of Condor.
Snow and Rozowicz first met in 1987. At that time Rozowicz was the owner of a financially troubled automobile dealership located in Massachusetts. Because of the dealership's financial difficulties, Rozowicz hired Snow as his general manager to revive the business, which Snow did. As a result of Snow's success, Snow became the general manager for two other automobile CT Page 8061 dealerships located in Massachusetts and owned by Rozowicz.
In early 1996 Rozowicz and Snow discussed the formation of a new corporation, which subsequently became the defendant Nation, for the purpose of operating a used automobile superstore. The site upon which they settled was in East Windsor, Connecticut, and the business was established there. More specifically, Rozowicz approached Snow with the idea of forming the new corporation, and in exchange, inter alia, for Snow's overseeing of the business, Rozowicz offered Snow a 25% stock interest in the corporation.[3] Snow accepted Rozowicz'5 offer and thereafter performed his obligations under the parties' oral contract by contributing his efforts to the incorporation of Nation and performing his other agreed-upon duties.
Sometime shortly after Nation was incorporated in 1996, Snow and Rozowicz decided to create the defendant Condor, as an "ancillary corporation" to Nation for the purpose of "insuring warranty work which Nation agreed to perform for its customers." (Pl.'s Cmplt ¶ 24.) Thus, in 1996 Condor was incorporated in Nevas. Snow was to receive a 25% interest in Condor in exchange for his work in developing and funding Nation.
By December 1996 Snow could no longer spend the majority of his time at Nation because the other automobile dealerships that he had managed previously for Rozowicz were beginning to suffer from his absence. Rozowicz and he decided that Snow should resume his position with Rozowicz's other dealerships and restore them to profitability, which again he did.
In early 1997 Nation began to flourish financially. As a result, $750.00 of Snow's shareholder salary was charged against Nation's revenue. Thereafter, in late 1997, Rozowicz paid each shareholder $12,500.00 from Nation's revenue.
In February 1998 Snow informed Rozowicz that he could no longer manage Rozowicz's other automobile dealerships on a rotating basis. Consequently, Snow offered to: (1) buy 85% of Rozowicz's ownership share in the three Massachusetts dealerships and (2) retain his Nation stock. Rozowicz rejected Snow's offer. Moreover, Rozowicz also refused to transfer Snow's 25% ownership interest in both Nation and Condor to him.
As a result of the foregoing, Snow resigned from all of his management positions with Rozowicz' s dealerships and commenced CT Page 8062 this action. Snow's complaint contains seven counts which are directed at three defendants. Snow's complaint alleges, respectively: (1) breach of contract against Rozowicz; (2) breach of contract against Nation; (3) breach of contract against Condor; (4) misrepresentation against Rozowicz; (5) breach of fiduciary duty against Rozowicz; (6) unjust enrichment against Rozowicz, Nation and Condor; and (7) violation of the Unfair Trade Practices Act ("CUTPA") against Rozowicz, Nation and Condor. At issue here are the defendants' motions to dismiss the plaintiff's complaint on the ground that the court lacks personal jurisdiction.
 DISCUSSION
"A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis in original; internal quotation marks omitted.) Gurliacci v. Mayer, 218 Conn. 531, 544,590 A.2d 914 (1991) "Because a lack of personal jurisdiction may be waived by the defendant, the rules of practice require the defendant to challenge that jurisdiction by a motion to dismiss. (Internal quotation marks omitted.) Knipple v. Viking Communications,Ltd., 236 Conn. 602, 605-06, 674 A.2d 426 (1996). "[A] motion to dismiss challenging the court's jurisdiction [requires] a two part inquiry. . . . The trial court must first decide whether the applicable state long-arm statute authorizes the assertion of jurisdiction over the [defendant]. If the statutory requirements [are] met, its second obligation [is] then to decide whether the exercise of jurisdiction over the [defendant] would violate constitutional principles of due process" (Internal quotation marks omitted.) Id., 606.
"If a challenge to the court's personal jurisdiction is raised by a defendant, either by a foreign corporation or by a nonresident individual, the plaintiff must bear the burden of proving the court's jurisdiction." Knipple v. VikingCommunications, Ltd., supra, 236 Conn. 607-08.[4] The motion to. dismiss admits all facts that are well-pleaded, invokes the existing record and must be decided upon the face of the record alone. Barde v. Board of Trustees, 207 Conn. 59, 62,593 A.2d 1000 (1988).
 I. Nation
CT Page 8063
Nation argues in support of its motion to dismiss that it is a Delaware corporation and that Snow is a New York resident. Therefore, Nation argues, under the express language of the applicable long-arm statute, General Statutes § 33-929, this court cannot obtain personal jurisdiction over Nation.
In addition to being incorporated in Delaware, however, Nation is also incorporated in Connecticut. Therefore, the long arm statute is inapplicable; indeed, Nation conceded as much at the hearing before this court on March 15, 1999. The sheriff's return, dated August 17, 1998, indicates that Tina Janezic, Nation s office manager, received in-hand service of process of this action in accordance with General Statutes § 52-57 (c) Accordingly, Nation's motion to dismiss for lack of personal jurisdiction is denied.
 II. Condor
Condor advances the same argument in support of its motion to dismiss that Nation put forward in its motion; viz., that Condor is a foreign corporation and Snow is a resident of New York. Therefore, pursuant to General Statutes § 33-929(f), this court cannot exercise personal jurisdiction over Condor.
It is undisputed that Condor, having been incorporated in the Island of Nevas on September 24, 1996, is a foreign corporation. (Condor's Mem. Supp., Exhibit A.) General Statutes §33-929(f) provides in relevant part: "Every foreign corporation shall be subject to suit in this state, by a resident of thisstate or by a person having a usual place of business in thisstate. . ." (Emphasis added.) Here, the plaintiff is neither a resident of Connecticut, nor is there any evidence before the court that the plaintiff has a usual place of business in this state. "Where a statute is clear on its face, there is no room for construction." Cote v. Gordon, 40 Conn. Sup. 15, 17,478 A.2d 631 (1984); Verrastro v. Siversten, 188 Conn. 213,448 A.2d 1344 (1982) Thus, under the express wording of subsection (f) of General Statutes § 33-929, this court could not exercise personal jurisdiction over Condor.
Nonetheless, "General Statutes § [33-929] permits the Connecticut courts to exercise jurisdiction over a foreign corporation, regardless of the corporation's consent . . . where `[t]he foreign corporation is transacting business in the state CT Page 8064 without a certificate of authority to do so, and the cause of action arises out of such business'. . . ." Travel v. Kelly, Superior Court, judicial district of New London at New London, Docket No. 539344 (March 12, 1997, Hurley, J.T.R.). General Statutes § 33-929 (e) provides: "Every foreign corporation which transacts business in this state in violation of section33-920 shall be subject to suit in this state upon any cause of action arising out of such business." Pursuant to this subsection of the long-arm statute, there is no requirement that the plaintiff be a resident of this state for the court to exercise personal jurisdiction over the foreign corporation. It is a requirement, however, for the exercise of personal jurisdiction under this subsection that the foreign corporation be conducting business in this state in violation of General Statutes §33-920.
General Statutes § 33-920 provides in pertinent part: "(a) A foreign corporation, other than an insurance, surety or indemnity company, may not transact business in this state until it obtains a certificate of authority from the Secretary of State . . . . No insurance, indemnity or surety company shall transact business in this state until it has procured a license from the Insurance Commissioner in accordance with the provisions of section 38a-41."[5] Presently, there is nothing before the court to indicate whether Condor has or has not acquired a certificate of authority from the State or a license from the Insurance Commissioner. Hence, this court is unable to determine whether the defendant has violated General Statutes § 33-920
for purposes of applying General Statutes § 33-929 (e) to this action.
Thus, Snow has failed to meet his burden of proof that personal jurisdiction exists over Condor pursuant to subsection (e) of General Statutes § 33-929, and, for that reason, Condor's motion to dismiss must be granted. See Knipple v. VikingCommunications, Ltd., supra, 236 Conn. 607-08 (plaintiff must bear burden of proving court's jurisdiction)
 III. Rozowicz
Rozowicz argues in support of his motion to dismiss that, under the precise wording of General Statutes § 52-59b, the court may not exercise personal jurisdiction over him in this action. Specifically, Rozowicz argues that the acts which give rise to Snow's claims occurred in New York, not Connecticut. CT Page 8065 Further, Rozowicz claims that Snow's causes of action do not allege that Rozowicz committed a tortious act within Connecticut. Finally, Rozowicz argues that any tortious conduct which he allegedly committed did not cause injury to a person or property within Connecticut. Additionally, Rozowicz claims that the court's exercise of personal jurisdiction over him in this action would violate constitutional principles of due process.
For the following reasons the court finds that the plaintiff has sufficiently alleged that Rozowicz committed a tortious act in Connecticut, and that the exercise of personal jurisdiction over him is appropriate pursuant to General Statutes § 52-59b
(a)(2).
General Statutes § 52-59b(a) provides, in pertinent part, "As to a cause of action arising from any acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual . . . who in person or through an agent: (2) commits a tortious act within the state. . . ." Under this subsection of the long-arm statute both nonresident private individuals and nonresident corporate officers are equally subject to the personal jurisdiction of the court if they commit a tortious act within this state.
"Where . . . an agent or officer commits or participates in the commission of a tort, whether or not he acts on behalf of his principal or corporation, he is liable to third persons injured thereby." Scribner v. O'Brien, 169 Conn. 389, 404, 363 A.2d 160
(1975). "It is black letter law that an officer of a corporation who commits a tort is personally liable to a victim regardless of whether The corporation is liable." Kilduff v. Adams, Inc.,219 Conn. 314, 331-32, 593 A.2d 478 (1991). No piercing of the corporate veil for the imposition of personal liability is necessary. Id., 331. Also, for the purposes of establishing jurisdiction under General Statutes § 52-59b (a)(2), "[r]egardless of where the harm is suffered, the tort must be committed in Connecticut, and the defendant must be physically present within the state at the time of commission." (Internal quotation marks omitted.) Abrams v. Riding High Dude Ranch, supra, Superior Court, Docket No. 345046.
The tort of misrepresentation is committed when one, in the course of his business or employment, supplies false information for the guidance of another in his business transactions, and that person justifiably relies to his pecuniary loss upon the CT Page 8066 false information; provided that the misrepresenting party fails to exercise reasonable care or competence in communicating the information. See Williams Ford, Inc. v. Hartford Courant Co.,232 Conn. 559, 575, 657 A.2d 212 (1995).
Although the plaintiff's complaint does not specifically allege when and where Rozowicz first allegedly misrepresented to Snow that he would transfer to him a percentage share in Nation and Condor, the plaintiff's affidavit does state that Rozowicz, at least on one occasion, made such a misrepresentation in Connecticut. (Pl.'s Mem. Opp., Affidavit ¶ 5.) Furthermore, the allegations of count four of the plaintiff's complaint sufficiently set forth such facts that Rozowicz, personally, committed the tort of misrepresentation. (Pl.'s Cmplt ¶¶ 10-13, 18-20, 53-59.)
Therefore, when the allegations of Snow's complaint are viewed in a light most favorable to him, and those allegations are read together with the unrefuted statements in his affidavits, this court finds that Snow has met his burden of proving, for purposes of establishing personal jurisdiction, that Rozowicz, personally, committed the tort of misrepresentation in Connecticut. Consequently, pursuant to General Statutes §52-59b (a)(2), this court has statutory long-arm jurisdiction over Rozowicz.
Because the court finds that Snow has met his burden of proof that this court has statutory long-arm jurisdiction over Rozowicz, it is necessary for the court to address whether the exercise of jurisdiction in this action would comport with the constitutional requirements of due process. "The due process clause of the [f]ourteenth [a]mendment permits a state to exercise personal jurisdiction over a non-resident defendant with whom it has certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' [Internal quotation marks omitted.] Calder v. Jones, 465 U.S. 783, 788, 104 S.Ct. 1482,1486, 79 L.Ed.2d 804 (1984) (quoting Milliken v. Meyer,311 U.S. 457, 463, 61 5. Ct. 339, 342, 85 L.Ed.2d 278 (1940) andInternational Shoe Co. v. Washington, 326 U.S. 310, 316,66 S.Ct. 154, 158, 90 L.Ed. 95 (1945))." Chaiken v. VW Pub. Corp. ,119 F.3d 1018, 1027 (2nd Cir. 1997)
"The due process test for personal jurisdiction has two related components: the minimum contacts' inquiry and the CT Page 8067 `reasonableness' inquiry. The court must first determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction. SeeInternational Shoe, 326 U.S. at 316, 66 S.Ct. at 158."Metropolitan Life Ins. Co. v. Robertson-Ceco Corp. , 84 F.3d 560,567 (2d Cir. 1996). "Once a court has determined that a defendant has purposefully established minimum contacts within the forum state, [the] contacts may be considered in the light of certain factors to determine whether the assertion of personal jurisdiction would comport with `fair play and substantial justice.' Burger King, [471 U.S. 462, 476, 105 S.Ct. 2174, 2184,85 L.Ed.2d 528 1985)]. . . ." United Elec. Workers v. 163Pleasant Street Corp. , 987 F.2d 39, 46 (1st Cir. 1993).
 A. Minimum Contacts
In determining whether minimum contacts exist, the court considers the relationship among the defendant, the forum, and the litigation. Keeton v. Hustler Magazine, Inc., 465 U.S. 770,775, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984). "The requisite `minimum contacts' necessary to subject a defendant to suit are not determined through a mechanical or quantitative evaluation of the defendant's activities in the forum, but rather through a qualitative examination of the [defendant's relationship with the forum and the litigation.]" Combustion Engineering, Inc. v. NETInternational Combustion, Ltd., 798 F. Sup. 100, 104 (D. Conn. 1992). "A plaintiff need only demonstrate that the defendant could have reasonably have anticipated being haled into court in Connecticut and that the plaintiff's cause of action is not materially different from an action that might have resulted directly from [the contacts]." Thomason v. Chemical Bank,234 Conn. 281, 296, 661 A.2d 595 (1995). "The specific facts of each case necessarily determine the outcome of a minimum contacts analysis." United States Trust Co. v. Bohart, 197 Conn. 34, 42,495 A.2d 1034 (1985).
Based upon the allegations of Snow's complaint, as well as the undisputed statements in his affidavits, Rozowicz has sufficient minimum contacts with Connecticut to satisfy the requirements of due process under the federal Constitution. Rozowicz frequently traveled to Connecticut in his effort to establish Nation and Condor, and he purposefully chose East Windsor, Connecticut for the location of his Nation automobile dealership. See Electric-Cable Assemblies, Inc. v. UNI-SourceOffice Furniture Parts, Inc, Superior Court, judicial district of CT Page 8068 Connecticut, Docket No. 052609 (July 11, 1997, Flynn, J.) (defendant traveled to Connecticut twice on business). Further, Rozowicz purposefully engaged in an ongoing business relationship with GMAC in Connecticut. Finally, Rozowicz allegedly committed the tort of misrepresentation in Connecticut.
Accordingly, the court finds that Snow's evidence demonstrates that Rozowicz purposefully availed himself of the protections of the laws of Connecticut, and the constitutional requirement that Rozowicz have minimum contacts with the forum state is met.
 B. Fairness
"Once the plaintiff has established that minimum contacts exist, the burden of proof shifts to the defendant who then must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." (Internal quotation marks omitted.) Inset Systems, Inc. v. Instruction Set,Inc., 937 F. Sup. 161, 165 (D. Conn. 1996). "Once minimum contacts have been established, the reasonableness of the exercise of jurisdiction must be determined by an evaluation of several factors. . . .," (Internal quotation marks omitted.) MetropolitanLife Ins. Co. v. Robertson-Ceco Core., supra, 84 F.3d 573.
The court finds that the application of the United States Supreme Court's five part test[6] to the facts in this case, demonstrates that the assertion of personal jurisdiction over this defendant would comport with "traditional notions of fair play and substantial justice." International Shoe Co. v.Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95
(1945).
First, the burden on Rozowicz resulting from the assertion of jurisdiction would be minimal. Rozowicz frequently travels to Connecticut, as he is the president of Nation which is located in East Windsor. Second, the interests of Connecticut in adjudicating the action are significant, as Nation is a Connecticut corporation, and many of the alleged tortious acts took place in this state. Third, Snow's interests in obtaining convenient and effective relief are not compromised by adjudicating this action in Connecticut, since Snow purposefully chose this forum to adjudicate this matter. Fourth, the interstate judicial system's interest in obtaining the most efficient administration of justice lies in Connecticut. "In CT Page 8069 evaluating this factor, courts generally consider where witnesses and evidence are likely to be located." (Internal quotation marks omitted.) Metropolitan Life Ins. Co. v. Robertson-Ceco Corp. , supra, 84 F.3d 574. The Nation dealership is located in this state, and many relevant witnesses also reside here. Finally, the states' shared interests in furthering substantive social policies are unaffected.
In light of the foregoing, the court finds that Rozowicz' s conduct and connection with this forum were such that he should reasonably have anticipated being haled into court here, and the constitutional requirements of due process have been satisfied. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297,100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)
Accordingly, for the foregoing reasons, Nation's and Rozowicz's motions to dismiss are denied. Condor's motion to dismiss is granted.
BY THE COURT
SHORTALL, J.